IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 9, 2008 Session

**EDDIE LEE DOUGLAS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 06-01-0266     J. Weber McCraw, Judge**

_____

**No. W2008-00395-CCA-R3-PC  - Filed October 21, 2008**

_____

The petitioner, Eddie Lee Douglas, appeals the denial of his petition for post-conviction relief from his second degree murder conviction, arguing that he received ineffective assistance of trial counsel and that his guilty plea was therefore unknowing and involuntary. Following our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Gary F. Antrican, District Public Defender, and Jeff Lee, Assistant Public Defender, for the appellant, Eddie Lee Douglas.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On August 16, 2006, the petitioner pled guilty in the Hardeman County Circuit Court to second degree murder for the stabbing death of the victim, Roger Spencer. The prosecutor recited the following factual basis for the plea:

> Your Honor, if this matter had gone to trial, the State would have introduced proof that on or about the 19th day of May, 2006, officers from Whiteville Police Department were dispatched to 138 Simmon Street there at Whiteville in Hardeman County regarding a stabbing. Officer Smalley was the first on the scene, observed

a black male subject identified as Roger Spencer lying on the floor in the living room; observed that Mr. Spencer was bleeding severely from multiple wounds.

The victim was breathing at that point in time. . . . He was pronounced dead later that evening.

Other officers responded and got statements from people on the scene. . . . [T]he witnesses told the investigators that the victim . . . and the [petitioner] . . . had gotten into an argument and a fight ensued. That fight broke up and they sat down. It seemed at some point [the petitioner] went into the kitchen and retrieved a knife. Later in the evening, a fight between them broke out again and the [petitioner] . . . stabbed [the victim] numerous times.

The [petitioner] was picked up. He subsequently showed law enforcement where he disposed of the weapon that was used. He gave a statement to law enforcement that night. As they were preparing to transport [the petitioner] to the Hardeman County Jail, they told him, "We have to put handcuffs on you" and his statement was, " Yeah, you better put handcuffs on me 'cause they'd get mad if you brought a murderer into the jail not cuffed."

At the conclusion of the sentencing hearing, the trial court sentenced the petitioner to twenty-one years at 100 percent in the Department of Correction. The petitioner subsequently filed a *pro se* petition for post-conviction relief, claiming that he received ineffective assistance of trial counsel and that his guilty plea was unknowing and involuntary. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that counsel was ineffective for, among other things, failing to adequately investigate the case and failing to effectively or adequately communicate with the petitioner. Specifically, he alleged that counsel's investigation "was lackadaisical," causing her to ignore or overlook evidence and potential beneficial witnesses, including those whose names had been provided by the petitioner. He further alleged that counsel, having met with him only one time outside the courtroom, rushed him into entry of his plea without fully informing him of his choices, the elements of the offenses, or the full ramifications of his plea.

At the January 30, 2008, evidentiary hearing, trial counsel, who was retained by the petitioner, testified that she spent approximately an hour interviewing him in the jail and then met with him for about an hour and a half on the day he entered his plea. The petitioner provided her with the nicknames for some witnesses, such as "Eat 'Em Up," but did not give her any full names or addresses. The police, however, had collected statements from the eyewitnesses, and counsel reviewed those statements, as well as the police reports and other information she received in discovery, with the petitioner before he entered his plea. She did not interview any of the witnesses herself and did not recall the name Eric Tisdale.

Trial counsel testified that she explained to the petitioner that he faced a choice of accepting the State's offer of pleading guilty to second degree murder with the sentence to be determined by the trial court or being indicted for first degree premeditated murder and proceeding to trial:

That's the day we went over all the discovery that I was given, all the statements of the witnesses, the officers' reports, and that day I told him that the offer was he could do the criminal information to second degree murder, if he did not take that, then he was going to be indicted on first degree murder, and the death penalty had been mentioned.

Trial counsel testified that she explained the elements of first and second degree murder, the differences in sentencing, and the potential enhancement factors that could be applied. She also explained that the State would use the petitioner's retrieval of the knife and the fact that he stabbed the victim fourteen times as proof of premeditation. She said she discussed the possibility of moving to suppress the petitioner's statement, given his drug and alcohol use at the time, but the prosecutor informed her that he would seek an indictment for first degree murder if she filed a motion to suppress. According to her agreement with the prosecutor, the petitioner had to plead guilty by information prior to the first Thursday in September, the day that indictments were presented to the grand jury. Therefore, time was of the essence in the petitioner's acceptance of the plea agreement. Though unhappy, the petitioner understood the choices he faced:

He was upset, of course, because this was his friend but he understood that he could either go to trial on first degree murder where the death penalty or life without possibility of parole or life imprisonment was at issue, or second degree murder where he could be sentenced between 15 and 25 years at 100 percent.

Trial counsel believed the differences in the penalties associated with convictions for first and second degree murder played a large role in the petitioner's decision to plead guilty. She said she did not recall the petitioner's having had any problems with a toothache.

On redirect examination, trial counsel testified that she believed she discussed with the petitioner how voluntary intoxication can affect premeditation but could not specifically recall the conversation. She also could not recall the specific language she used when explaining to him the differences between first and second degree murder. On recross-examination, she agreed that the petitioner's intoxication had not prevented him from summoning help for the victim, walking to the police station to turn himself in, or showing officers where he had disposed of the weapon.

Eric Glenn Tisdale, Sr., who said he had been a friend of both the victim and the petitioner, testified that the second fight between the men began when the group was listening to music and the victim suddenly dove on top of the petitioner. He said he saw the petitioner punching at the victim but never saw him with a knife. Tisdale testified that he did not make any statement to the police and that trial counsel never contacted him.

-3-

The petitioner testified that he "had the knife from the first fight" but had forgotten he had it. He said that when he got up to leave, the victim jumped on him and began choking him. He warned the victim that he had a knife and asked him to let him go, but the victim continued his chokehold. Finally, he "just got weak or tired" and began stabbing the victim. The petitioner insisted that he never planned to kill the victim but instead was "just trying to get him off . . . to survive."

The petitioner testified that he gave both the police and trial counsel the names of twelve or thirteen eyewitnesses to the fight. He did not know if trial counsel ever talked to those individuals but knew that she never spoke to Eric Tisdale, despite his having given her his name. He said that trial counsel came to see him only once in the jail, for thirty or forty minutes, and never explained the elements of second degree murder. On the day that he entered his plea he thought that he was going to the dentist to have his teeth extracted and was surprised when he arrived at court. He said he wanted to go to trial, but trial counsel convinced him that he would be better off taking the plea offer. He stated, however, that he felt rushed into accepting the plea.

The petitioner testified that when he filled out the paperwork for the plea, trial counsel told him that sentencing at 30 percent release eligibility "was out" but that he might get 45 or 65 percent. He said she never discussed enhancement factors with him, and he was "never worried" that he would be sentenced at 100 percent. Had he understood the plea agreement, he would never have accepted it but instead would have gone to trial.

On February 6, 2008, the post-conviction court entered an order denying the petition for post-conviction relief. Accrediting the testimony of trial counsel and noting the overwhelming evidence against the petitioner, the post-conviction court found that trial counsel was not deficient in her representation and had likely negotiated the best possible deal under the circumstances. The court further found that the petitioner fully understood the nature and consequences of the plea agreement. Accordingly, the court concluded that the petitioner failed to show that he was denied the effective assistance of counsel or that his plea was unknowing and involuntary.

## ANALYSIS

### I. Post-Conviction Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the

facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

On appeal, the petitioner contends that trial counsel was ineffective for advising him to plead guilty to second degree murder when he "could have refuted the first degree *mens rea* through witnesses, self-defense, and voluntary intoxication." The petitioner argues that, had counsel informed him that voluntary intoxication can negate a premeditated and intentional killing and interviewed Tisdale, who could have provided testimony in support of a theory of self-defense, he would not have pled guilty but instead would have gone to trial with the "likelihood that further witnesses and voluntary intoxication would have provided a defense." The State argues that the

post-conviction court properly found that the petitioner failed to prove his claims by clear and convincing evidence. We agree with the State.

In denying relief on this claim, the post-conviction court specifically accredited the testimony of trial counsel with respect to her preparation for the case and the information she communicated with the petitioner. Conversely, the court found that Tisdale was not credible, noting that although he testified that he witnessed the fight, he "incredibly did not see the victim get stabbed fourteen times as the facts indicated." The post-conviction court's order states in pertinent part:

> The Court finds that [trial counsel] provided adequate assistance; she met with petitioner and discussed the case, including possible sentences. [Trial counsel] successfully fought a first degree murder indictment and conviction. Petitioner failed to show any deficient performance by [trial counsel] or that [he] was prejudiced. The entry of a plea of guilty to avoid the risk of a greater sentence does not make a plea involuntary.

The record fully supports the findings and conclusions of the post-conviction court. As the post-conviction court observed, trial counsel was faced with a case in which there was overwhelming evidence against the petitioner, including numerous eyewitnesses who observed the petitioner retrieve the knife and stab the victim multiple times and the petitioner's own statement to police in which he admitted his responsibility for the killing. According to trial counsel, the petitioner never provided her with Tisdale's name as a potential witness. Even had she interviewed him, it is highly doubtful that his testimony would have been sufficient for a jury to find that the petitioner acted in self-defense or did not premeditate the killing given the other eyewitnesses' testimony and the undisputed fact that the victim sustained fourteen separate stab wounds. We conclude, therefore, that the petitioner has not met his burden of showing that trial counsel was deficient in her representation or that he was prejudiced as a result.

### III. Voluntary and Knowing Guilty Plea

In an interrelated argument, the petitioner contends that he was precluded from entering a knowing and voluntary guilty plea due to the inaccurate and incomplete advice of counsel, whose failure to properly investigate the case caused her to ignore or overlook evidence of self-defense and voluntary intoxication.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record reveals that the forty-year-old petitioner, who reported that he dropped out of school after the tenth grade but later obtained his GED, had a prior criminal history consisting of several misdemeanor convictions, including two convictions for assault. Thus, he was familiar with the criminal justice system at the time he entered his guilty plea. During the plea colloquy, the trial court appropriately informed the petitioner of his constitutional rights and of the specific rights he was waiving by pleading guilty. The petitioner assured the trial court that his counsel had thoroughly discussed the plea agreement with him, that he fully understood its terms and the constitutional rights he was waiving by entering his plea, and that he was not under the influence of alcohol or drugs. He also informed the court that he believed trial counsel had adequately investigated the case and was satisfied with her representation.

At the evidentiary hearing, trial counsel testified that she reviewed with the petitioner the evidence against him and informed him of the elements of first and second degree murder, along with the range of penalties associated with the offenses. She also explained that if the petitioner did not accept the plea offered by the State, the prosecutor intended to have him brought to trial on a first degree murder indictment. Although the petitioner testified that he felt pressured into accepting the plea, his evidentiary hearing testimony indicates that he nonetheless realized the choice was still his:

> And I wanted some time to think about it but everything was rolling, you know, so fast that they went down to Somerville and I asked her I didn't have enough of time and she told me it was a one deal time [sic], if I didn't take it today, sign those papers, it was going back up to first degree, and I couldn't understand how it was going to go back up to first degree when you got it down from first degree to second degree. It was a lot of threats on me, just last minute, you know, I ain't sure what I'm doing. "It's up to you. Take it today or don't. It's going back up to first degree. You don't want that." Of course, you know, I didn't want that. So I signed the papers.

We conclude, therefore, that the record fully supports the post-conviction court's findings that the petitioner's guilty plea was knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in her representation or that his guilty plea was unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE